**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ERNESTO Y. CASTILLO,<br>*Plaintiff*<br><br>-vs-<br><br>NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING, U.S. BANK N.A., AS TRUSTEE;<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-21-CV-00437-XR |

**ORDER**

On this date, the Court considered Defendants' Amended Motion to Dismiss Under Rule 12(c) (ECF No. 21), subsequently converted to a Motion for Summary Judgment (ECF No. 38), Plaintiff's response (ECF No. 30), and Defendants' Reply (ECF No. 32). After careful consideration, the Court issues the following order.

**BACKGROUND**

On May 23, 2003, Plaintiff assumed retail installment and mechanic's lien contracts originally executed by Joe and Ann Marie Estrada. ECF No. 21-1 at 1–10. Under the agreements, Plaintiff promised to repay a $196,704 original loan by Jim Walter Homes secured by a lien on the real property located at 663 Redfern Drive (the "Property"). *Id.* The loan is now owned by U.S. Bank N.A., as trustee, and serviced by NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"). *See id.* at 39.

On March 10, 2021, after Plaintiff defaulted on his repayment obligations, a representative for Plaintiff faxed a loss mitigation application on his behalf to Shellpoint. *See id.* at 12–29; ECF No. 1-2 ¶ 8. The correspondence included a uniform borrower assistance form, IRS form 4506-T, profit-and-loss statements, and bank statements. ECF No. 21-1 at 12–29.

Shellpoint acknowledged receiving the application in a letter dated March 16, 2021. *Id.* at 31. Three days later, Shellpoint notified Plaintiff of the amount needed to reinstate the loan and a deadline for repayment. *Id.* at 34–35. On March 26, 2021, Shellpoint notified Plaintiff that his loss mitigation application had been denied because the owner of his loan, U.S. Bank, did not participate in the standard loan modification program and could not offer a modification. *Id.* at 39–40. Shellpoint further noted that Plaintiff could pursue other options to avoid foreclosure, including curing his default or pursuing a short sale or deed-in-lieu of foreclosure. *Id.* It also reiterated the amount needed to reinstate the loan. *Id.*

Plaintiff did not pursue the foreclosure alternatives, and Defendants scheduled the property for foreclosure on May 4, 2021. ECF No. 1-2 ¶ 14(a). Proceeding *pro se*, Plaintiff filed an Original Petition in state court seeking to enjoin Defendants from foreclosing on his home, alleging that they (1) failed to adequately respond to a March 2021 qualified written request and failed to adequately provide loss mitigation options in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulations; (2) failed to permit him to reinstate and "advise[d]" him that U.S. Bank, N.A., as trustee, forbade any mortgage assistance; and (3) improperly foreclosed on the Property. *Id.* ¶¶ 8–10. The state court issued an *ex parte* temporary restraining order ("TRO") on April 30, 2021, preventing the foreclosure sale. ECF No. 1-5. Defendants removed the case to this Court on May 3, 2021, based on both diversity and federal question jurisdiction. ECF No. 1 at 2.

On July 7, Defendants filed a motion to dismiss, followed by an amended motion to dismiss under Rule 12(c), the instant motion, filed on September 22. *See* ECF Nos. 13, 21. Defendants argue that Plaintiff's March 2021 request did not trigger any obligations arising under RESPA, that Plaintiff failed to cure his default despite multiple opportunities to do so, and

that Plaintiff failed to allege any facts to support a claim for wrongful foreclosure. *See* ECF No. 21. Plaintiff responded that the Original Petition gave Defendants "fair notice of what [his] claim was about" and that he had suffered damages in the form of "consumer harm and injury." ECF No. 30 at 1.[1] After the amended motion to dismiss was fully briefed and the discovery deadline had expired, Defendants moved under Rule 12(d) to convert their Rule 12(c) motion to a motion for summary judgment. ECF No. 33. The Court granted the motion and directed Plaintiff to file a response to the converted motion for summary judgment no later than March 2, 2022. ECF No. 38. No such response has been filed.

## DISCUSSION

### I. Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[1] Plaintiff's response also raises numerous claims not asserted in his Original Petition, including (1) predatory lending and violations of (2) the Texas Fair Debt Collection Act, TEX. FIN. CODE § 392.001, *et seq.*, (3) the National Housing Act, 12 U.S.C. § 1701, *et seq.*, (4) the Unfunded Mandates Reform Act, 2 U.S.C. § 1501, *et seq.*, (5) the "Making Home Affordable Program"—presumably a reference to the Home Affordable Mortgage Program ("HAMP"), 15 U.S.C. § 5219a—and (6) TEX. PROP. CODE § 51.0001, *et seq. See* ECF No. 30 at 2–3. Even liberally construed, the Court cannot locate references to any of these statutes in the Original Petition nor can the Court discern the factual basis for Plaintiff's assertion that they have been violated. Considering that Plaintiff has not sought leave to file an amended complaint adding these claims, the Court will neither imply nor further address any potential claims arising out of these statutes.

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

The Court notes that Plaintiff is proceeding *pro se* in this case. While courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995)). "The notice afforded by the Rules of Civil Procedure and the local rules" is "'sufficient' to advise a *pro se* party of their burden in opposing a summary judgment motion." *Johnson*, 2017 WL 598499, at *2 (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)). Likewise, "*pro se* status does not exempt [a litigant] from the usual evidentiary requirements of summary judgment." *Id.* (citing *Ellis v. Principi*, 246 F. App'x 867, 869 (5th Cir. Sept. 5, 2007) (per curiam)).

## II. Analysis

### A. RESPA Claims

Plaintiff suggests that Defendants failed to properly respond to his request for mortgage assistance in violation of 12 U.S.C. §§ 2605(e)(1) and (2), and that they failed to present proper retention options or loss mitigation reviews before initiating foreclosure, presumably in violation of 12 C.F.R. § 1024.41. ECF No. 1-2 ¶¶ 9–10.[2]

Section 2605(e) describes the duty of a loan servicer to respond to borrower inquiries and provides that if a "servicer of a federally related mortgage loan receives a qualified written

[2] The Original Petition also references 24 C.F.R. § 3500.21(e). *See* ECF No. 1-2 ¶ 10. This provision was repealed in 2014 when the Dodd-Frank Act transferred rulemaking authority over RESPA from the Department of Housing and Urban Development ("HUD") to the Consumer Financial Protection Bureau ("CFBP"). *See* Pub. L. No. 111–203, § 1098, 124 Stat. 1376, 2104 (2010). The CFPB subsequently replaced the HUD provision with a similar regulation under 12 C.F.R. § 1024.36(b). *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 995 n.8 (5th Cir. 2019). Regardless of the provision invoked, it is not clear what this reference is intended to achieve. Both regulations merely provide that servicers may establish a separate and exclusive office and address for the receipt and handling of QWRs. *See* 24 C.F.R. § 3500.21(e); 12 C.F.R. § 1024.36(b). None of Plaintiff's claims relate to Shellpoint's use of a separate address for QWRs. *See generally* ECF No. 1-2.

request [QWR] . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 [business] days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). Such a request must be made in writing, enable the loan servicer to identify the name and account of the borrower, and include a statement that the account is either in error or set out the other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d. 747, 768 (N.D. Tex. Mar. 29, 2012). Within thirty days of receipt of a QWR, the servicer must either make appropriate corrections to the borrower's account or, after investigation, provide a written explanation including a statement of reasons the servicer believes the account is correct or any other information requested by the borrower. *Id.* § 2605(e)(2). To state a viable claim under Section 2605(e), a plaintiff must plead (1) his correspondence met the requirements of a "qualified written request," (2) that defendant failed to timely respond to the request, and (3) that the failure caused plaintiff damages. *Williams v. Wells Fargo Bank*, 560 F. App'x 233, 241 (5th Cir. 2014).

As a preliminary matter, Defendants note that RESPA does not impose any obligations on loan owners such as U.S. Bank, N.A., as trustee. ECF No. 21 at 3 (citing *Christiana Tr. v. Riddle*, 911 F.3d 799, 804–05 (5th Cir. 2018)). They further observe, correctly, that the March correspondence did not trigger Shellpoint's obligations under RESPA because Plaintiff sought to modify his obligations under the loan and did not request any loan servicing information. *Id.* (citing *Banks v. Wells Fargo Bank N.A.*, No. 3:17-cv-2381-B, 2018 WL 1427079, at *3 (N.D. Tex. Mar. 21, 2018) (concluding that a request for a loss mitigation review and retention options does not relate to servicing of the loan and, accordingly, that the defendant financial institution did not violate RESPA for failing to respond to Plaintiff's alleged request for this information)).

Even if Plaintiff's loss mitigation request constituted a QWR, Plaintiff has not alleged that he has suffered any injury as a result of Shellpoint's purported failure to respond to his request. *Matter of Parker*, 655 F. App'x 993, 997 (5th Cir. 2016) (per curiam). A RESPA plaintiff must allege facts "giving rise to a reasonable inference that [they] suffered actual damages." *Id.* A scheduled foreclosure which does not occur is not a sufficient injury to state a RESPA claim. *Perez v. Wells Fargo USA Holdings, Inc.*, No. 7:19-cv-317, 2019 WL 6687704, at *9 (S.D. Tex. Dec. 6, 2019). Plaintiff articulates only a potential future foreclosure or eviction at some future time as his injury. ECF No. 1-2 ¶ 11. His unsubstantiated assertion of "consumer injury and harm," ECF No. 30 at 1, is not sufficient to defeat a motion for summary judgment. *Brown*, 337 F.3d 539, 541.

To the extent Plaintiff asserts a claim for violation of the loss-mitigation procedures set forth under 12 C.F.R. § 1024.41, it also fails as a matter of law. The procedures for responding to a borrower's loss mitigation request ("LMR") are similar to the requirements for responding to a QWR. Specifically, upon receipt of a LMR, a service must "notify the borrower within 5 [business] days . . . that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i). Within thirty days of receiving a complete application, the servicer must evaluate the borrower for all loss mitigation options available and provide the borrower with a written notice of the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the mortgage owner. 12 C.F.R. § 1024.41(c)(1).

Here, the summary judgment record establishes that Defendants considered Plaintiff's loss mitigation application and offered foreclosure alternatives within the timeline contemplated

by the regulation. ECF No. 21-1 at 39–40. On March 16, 2021, four business days after Plaintiff submitted his LMR, Shellpoint notified Plaintiff that it had received his application and that it was complete. *See* ECF No. 21 at 31. Within three weeks of receiving his application, Shellpoint informed Plaintiff of its decision. *See id.* at 39. While Shellpoint determined that it could not offer a loan modification, it noted that Plaintiff could pursue a short sale, a deed-in-lieu, or reinstate the loan by paying the delinquent funds. *Id.* Although Plaintiff was likely disappointed with the denial of his request, Shellpoint's responses to the LMR complied with the requirements of 12 C.F.R. § 1024.41. Plaintiff was not entitled to more. *See Coronado v. Ocwen Loan Servicing LLC*, No. 5:15-cv-1006-DAE, 2016 WL 11580299, at *3 (W.D. Tex. Feb. 25, 2016) ("a mortgagor has no automatic right to a loan modification"). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's claims arising out of RESPA and its related regulations.

**B. Plaintiff's Right to Reinstate**

Plaintiff alleges that Defendants failed to permit him to reinstate and "advise[d]" him that "U.S. Bank policy forbids any mortgage assistance to their homeowners." ECF No. 1-2 ¶ 10. These allegations do not appear to have any basis in fact. First, the summary judgment record establishes that Defendants afforded Plaintiff multiple opportunities to reinstate after defaulting. Shellpoint first sent a March 19 response to his loss mitigation application with specific reinstatement instructions including an amount, due date, and potential additional fees he could incur if he failed to meet the initial timeline. ECF No. 21-1 at 34–35. It then reiterated this information in its March 26 application denial, noting Plaintiff could still bring the loan current. *Id.* at 39–40. Likewise, Shellpoint did not advise Plaintiff that "U.S. Bank policy forbids any mortgage assistance." Rather, Shellpoint informed Plaintiff that U.S. Bank did not participate in

loan modification program, and offered alternatives for reinstatement. ECF No. 21-1 at 39–40.

Even assuming that these factual allegations are true, however, the Court cannot discern from the Original Petition or Plaintiff's response what claims they are intended to support. Plaintiff has not alleged a cause of action for breach of contract or any claims sounding in tort. Plaintiff has not identified a provision in the documents forming the parties' contract that required Shellpoint or U.S. Bank, N.A., as trustee, to permit Plaintiff to reinstate once he defaulted. *See* ECF No. 1-2; ECF No. 21-1 at 1–10. Nor has Plaintiff identified any common law duty that guarantees a mortgagor the right to reinstate after defaulting. *See Guzman v. Select Portfolio Servicing, Inc.*, 612 F. App'x 730, 733 (5th Cir. 2015) ("Guzman asks this court to impose a new common law duty on mortgage servicers"). More importantly, even if the Court could locate a duty to reinstate in the parties' contract or in the common law, there is no reason to believe that Defendants violated such a duty, given that Plaintiff never tendered reinstatement funds to either Defendant. Accordingly, to the extent Plaintiff seeks to vindicate an alleged right to reinstatement, his claim fails as a matter of law.

**C. Wrongful Foreclosure**

Plaintiff also appears to assert a claim for wrongful foreclosure, alleging that Defendants improperly scheduled a foreclosure sale without complying with unspecified federal law. ECF No. 1-2 ¶¶ 9–10, 13.

In Texas, a claim for wrongful foreclosure requires a plaintiff to show: (1) a defect in the foreclosure proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and grossly inadequate selling price. *Foster v. Deutsche Bank Nat'l Trust Co.*, 848 F.3d 403, 406 (5th Cir. 2017). A wrongful foreclosure claim cannot survive if the party asserting the claim never lost the property in question. *Id.* (citing *Motten v. Chase Home Fin.*,

831 F. Supp. 2d 988, 1007 (S.D. Tex. 2011) (reasoning that recovery is premised on lack of possession of the subject property)); *see also Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 423 (5th Cir. 2013) ("No sale took place here, as the state court granted an injunction to prevent the sale of the house. Without a sale of the house, there can be no viable wrongful foreclosure claim under Texas law."). As such, Texas courts do not recognize an action for attempted or anticipatory wrongful foreclosure. *See Motten*, 831 F. Supp. 2d at 1007.

The Court agrees with Defendants that Plaintiff's claim for wrongful foreclosure cannot succeed. Plaintiff has not alleged that the Property was sold for a grossly inadequate price or identified an alleged defect in the sale. Indeed, Plaintiff has failed to allege that the Property has even been sold. The record demonstrates that Plaintiff was able to obtain a TRO in state court to temporarily enjoin the foreclosure of the Property. ECF No. 1-5. Accordingly, to the extent Plaintiff seeks to assert a claim for wrongful foreclosure, it fails as a matter of law.

**D. Injunctive Relief**

Because Plaintiff's substantive claims fail as a matter of law, they cannot support his claim for injunctive relief. "Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (citing *Brown v. Ke–Ping Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). Accordingly, injunctive relief is not appropriate here.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment, as converted from a motion to dismiss under Rule 12(c) (ECF No. 16) is **GRANTED.** Plaintiff shall take nothing by his claims and his claims are **DISMISSED WITH PREJUDICE**.

All pending motions, including Plaintiff's pending motions *in limine* (ECF Nos. 36, 37) are **DISMISSED AS MOOT**.

Defendants are awarded costs and may file a bill of costs pursuant to the local rules. A final judgment pursuant to Rule 58 will follow.

The Clerk is **DIRECTED** to mail a copy of this order to Ernesto Y. Castillo, 663 Red Fern Drive, San Antonio, TX 78264.

It is so **ORDERED**.

**SIGNED** this 29th day of March, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE